IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAULA PETTWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 08-0618-KD-M |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, *et al*, | ) ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

This action is before the Court on the motions for summary judgment filed by defendant Equifax Information Services, LLC (Equifax) and Experian Information Solutions, Inc. (Experian), plaintiff Paula Pettway's (Pettway) response, the defendants' replies, and supporting evidence (docs. 74, 75, 89-92, 96, 99, 101).[1] Upon consideration, and for the reasons set forth herein, Experian's motion for summary judgment is **GRANTED** and Equifax's motion for summary judgment is **GRANTED.**

---

[1] Defendants filed a motion to strike Pettway's exhibits number 6 through 12 because they were not produced during discovery and Pettway should not now be permitted to rely upon these exhibit (doc. 100). These exhibits, dating from 2004 through 2005, appear relevant only to Pettway's argument, raised for the first time in response to the motions for summary judgment, that Experian and Equifax inaccurately reported the CitiFinancial account and inaccurately included possibly four other CitiFinancial accounts on her credit reports which were not hers. However, because the Court has not relied upon these exhibits to reach its decision regarding the claims raised in Pettway's amended complaint, the motion to strike is **MOOT**.

Defendants also filed a motion to strike Pettway's addendum to her response (doc. 102) wherein she states that she would like to continue with her exhibits. The addendum is a narrative statement of her contacts with Equifax and Experian regarding the alleged erroneous and derogatory reporting of her CitiFinancial and McRae's accounts, copies of letters, denials of credit, and credit reports from 2005 through 2006. As will be discussed infra, Pettway cannot amend her complaint by way of her response to the motion for summary judgment to add new claims involving different credit accounts which were not collection accounts at the time she filed her amended complaint. Therefore, the motion to strike is **GRANTED.**

I. Procedural background

On October 22, 2008, Pettway filed her complaint against Equifax, TransUnion LLC. (TransUnion), Experian, DirecManagment, Inc., (Direct) and Central Credit Solutions, LLC. (Central) (doc. 1).[2] She amended the complaint on October 23, 2008 (doc. 4). Pettway brings her complaint pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*

Pettway alleges that she is a consumer[3] as defined by the Act. Pettway alleges that in July 2008 she advised Experian and Equifax of inaccurate reporting of several collection accounts which were either not her accounts or had been paid. Pettway alleges that Experian and Equifax failed to conduct a proper investigation and remove the accounts or correct the report to show that the accounts had been paid which resulted in these inaccuracies continuing to appear on her report. Pettway alleges that she was denied credit in September 2008 because of these inaccuracies.

In Count Two of the amended complaint, Pettway alleges that Experian and Equifax failed to comply with 15 U.S.C. § 1681e(b), 1681i(a) and 1681i(a)(5). Specifically, Pettway alleges that Experian and Equifax failed to put into place procedures to properly reinvestigate consumer complaints of inaccuracies, negligently or willfully failed to properly consider and

---

[2] Defendants TransUnion, Direct, and Central were dismissed from the case (docs. 50, 53, 105).

[3] In their motions for summary judgment, defendants address several accounts wherein Pettway applied for a business credit card but was denied credit. Since the FCRA protects only consumers and this action was brought pursuant to that Act, the Court need not address any claim or argument based on any alleged denial of credit for Pettway's business. Thompson v. Equifax Credit Information Services, Inc., 2002 WL 34367325 (finding that "credit reports issued for business purposes are not covered by the [FCRA] and, thus, evidence relating thereto is irrelevant to damages claimed by Plaintiff pursuant to the FCRA.")

give due weight to the information she submitted with her complaint and request for reinvestigation, and willfully or negligently refused to properly reinvestigate her credit report after her request.

II. Factual background[4]

Pettway is a consumer who incurred certain medical debts in 2006 and 2007 to two medical service providers: Emergency Medicine Associates of Mobile, P.C. (Emergency) and Seton Medical Management (Seton).

The Central collection account

In January 2008, the Emergency account was placed for collection with Central (doc. 90, p.3, 90-2). Pettway paid Emergency with a check payable to "Emergency Med. Assoc." in the amount of $192.00, dated February 1, 2008, the back of which shows a deposit stamp of "02/12/2008" (doc. 96, Exhibit 3). Pettway stated at deposition that she had paid the debt direct to Emergency and not to Central (doc. 101, p.15, depo pages 56-57) .

On or about March 4, 2008, Pettway received a letter from Central regarding collection of the debt due to Emergency in the amount of $220.79 (doc. 96, Exhibit 3). The letter instructed Pettway that the debt was due and that the letter was an attempt to collect the debt. On or about March 2008, Central began to report the Emergency collection account to Equifax and Experian as a collection account with a balance due (doc. 75, p. 40; 90-2).

The Direct account

---

[4] When ruling on a motion for summary judgment, the court views "the evidence and all reasonable inferences in the light most favorable to the non-moving party." Battle v. Board of Regents for Ga., 468 F.3d 755, 759 (11th Cir 2006). However, the facts established for purpose of summary judgment may not be the actual facts established at trial. See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995).

In January 2008, the Seton account was placed for collection with Direct (doc. 90, p.4, 90-3). On or about January 29, 2008, Pettway received a letter from Direct regarding collection of a debt due to Seton in the amount of $111.95 (doc. 96, Exhibit 3). The letter instructed Pettway that the debt had been placed for collection, advised her of the Federal law, and explained that Pettway "should make all payments and inquiries directly to this office." (Id).

Pettway paid Seton with a check payable to "Seton Medical Management" in the amount of $105.00, dated February 1, 2003,[5] the back of which shows a deposit stamp of "02/13/2008" (doc. 96, Exhibit 3). On or about July 2008, Direct began to report the Seton collection account to Equifax with a balance due (doc. 90-3).

Report from Credit Technologies,Inc.

In June 2008, a consumer report from Credit Technologies, Inc., was provided to First Choice Funding-Mobile d/b/a Norstar, for the applicant Pettway. Four accounts are listed under the section titled "Collection Accounts". The report indicates that four accounts were reported with Equifax: Central, Direct, Cap One, and CitiFinancial and that three accounts were reported with Experian: Central, Cap One, and CitiFinancial. The report also shows the Cap One account as "settled" and "settlement accepted on this account" with a date of last activity of September 2002 and the CitiFinancial account as "settled", "settlement accepted on this account", and "charged off account" with a date of last activity of June 2003. Global Tel Con was not on the report (doc. 96. p. 26-32).

Pettway contacts Experian and Equifax

---

[5] The date appears to be a mistake. The check is in numerical sequence with the check to Emergency Medicine Associates and the back shows a deposit date of February 13, 2008.

Pettway wrote Experian and Equifax on July 24, 2008, sending identical letters, as follows:

> I am writing regarding the collections accounts on my credit report. They are in error and I am requesting an investigation.
>
> I received a call from both collection agencies. I told them that I thought they had made a mistake, and that the accounts were not mine. I have been receiving an influx of collection letters in the mail for a Paula A. Pettway. So, I assumed this was also for the same Paula A. Pettway, that I had been receiving her mail.
>
> I decided to pay the bill because it was a small amount until I could find out for certain if it was or was not mine. Their letters said I had 30 days to respond. I paid the bills within the next 2 days.
>
> I can provide the cancel (*sic*) checks, if necessary.

(doc. 96, Exhibit 1). Pettway also contacted Experian by phone on or around July 28, 2008 and identified Central and Direct as the collections accounts referenced in her letter (doc. 75, p.8, Affidavit of Kimberly Hughes, Consumer Affairs Special Services Consultant).

Experian responds

Experian's credit file on Pettway contained only the Central collection account. Experian investigated by sending an Automated Consumer Dispute Verification (ACDV) form to Central, the source of the account information, and then on or about July 29, 2008, sent Pettway an "Investigation Results" statement (Id.). The statement explained that "[w]e completed investigating the items you disputed with the sources of the information and here are the results: . . . Central Credit Solutio[n] . . . Updated." (doc. 75, p. 44). "Updated" is defined as "A change was made to this item; review this report to view the change. If ownership of the item was disputed, then it was verified as belonging to you." (Id). The statement explained the dispute verification process, and explained that "[t]his summary shows the revision(s) made to your

credit file as a result of the verification we recently completed". If you still question an item, then you may want to contact the source of the information" (Id.) The statement also provided Pettway with contact information for Central (Id.)

The Experian statement also indicated that Central opened the collection account in January 2008, reported it since March 2008, and that the last report was July 2008. (doc. 96, Exhibit 2, doc. 75, p. 45). The statement confirmed that this was a collection account, the original creditor was Emergency, the original debt was $192.00, the recent balance was $220.00, the "Account information [was] disputed by consumer", and that "[t]his item was verified and updated on Jul[y]08" (doc. 96, Exhibit 2).

Experian updated the collection account but did not delete it because the account was verified by Central as belonging to Pettway and unpaid (doc. 75, p. 38, Exhibit G, account verification form). John Holloway, CEO of Central, gave a declaration wherein he states that he verified the account to Experian as belonging to Pettway and not paid to Central as of July 30, 2008 (doc. 75, p. 39-40, Exhibit H).

Equifax responds

In response to Pettway's letter, Equifax provided a credit report dated July 31, 2008, and wrote Pettway as follows:

> We have reviewed your concerns and our conclusions are: Please be specific with your concerns by listing the account names, numbers, and the nature of the dispute.

(doc. 96, Exhibit 2). Pettway did not provide Equifax with the information requested. Equifax took no further action.

Equifax's July 31, 2008 credit report showed only Central and Direct as collection

6

accounts among the approximate fifteen entities reporting  (doc. 96, Exhibit 2, p.1).  The report indicates that Central was assigned to collect the debt due Emergency in January 2008, that the debt was reported as unpaid as of July 2008, that the balance due was $220.00, that the initial amount due was $192.00, and that Pettway disputed this account information.  The report also indicates that Direct was assigned to collect the debt due Seton in January 2008, that the debt was reported as unpaid as of July 2008, that the balance due was $111.00, that the initial amount due was $105.00, but without notation of dispute.

Denial of Credit

In the complaint, Pettway alleges that she was denied credit in September 2008 because of these items on her consumer credit report.  In response to Interrogatory No. 6, Pettway answers by listing approximately 22 entities which have denied her credit since 2004, some after the date of her amended complaint.  She lists a denial by Whitney Bank on September 19, 2008 (doc. 96, p. 37).

III.  Standard of Review

Summary judgment should be granted only if "there is no genuine issue as to any material
fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).9 The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

7

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted). The mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of the Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

IV. Analysis

Claims relating to the CitiFinancial, Cap One, and Global Tel Con accounts

In her response, Pettway raises factual allegations regarding inaccurate reporting and failing to reinvestigate disputes involving Equifax and Experian's reporting of her CitiFinancial account which arose during 2004 and 2005. She also mentions that she discussed the Cap One account with the Magistrate Judge and that she tried to bring out her claims regarding this account during her depositions. She also states that she can prove that the Global Tel Con account is not hers (doc. 96, p. 3-4).

In the reply, Equifax argues that these are new allegations regarding the CitiFinancial and

8

Global Tel Con accounts which are raised for the first time in the response. Equifax argues that Pettway cannot amend her complaint by raising new claims about different accounts in her response to the motion for summary judgment. Equifax also states that even if Pettway's claims were allowed, the claims are time barred because greater than two years have passed between Pettway's discovery of any derogatory reporting of the CitiFinancial and Global Tel Con accounts and filing her lawsuit.

In the reply, Experian argues that the Global Tel Con account has never appeared on Pettway's Experian credit file and that any claim regarding the Capital One account is barred by the statute of limitations. Experian also relies upon Pettway's response wherein she states that "Experian only report the [Central] Credit Solution account in error" (doc. 96, p.1). Experian reiterated that it never reported the Direct collection account and makes no argument regarding the CitiFinancial account. Experian relies upon Pettway's deposition testimony that the Direct, Central, Global E Teleco and Capital One accounts are the relevant accounts (doc. 101, p.2-3), and addresses those claims.

Pettway did not amend her complaint to include any claim based on any alleged inaccurate reporting or failure to conduct a reasonable investigation of the disputed accounts of CitiFinancial, Global Tel Con, or Capital One. In her complaint, Pettway alleges as follows:

> 14. In 2008, adverse information contained in the plaintiff's consumer credit report by Equifax, Trans Union and Experian stated and implied that numerous accounts of hers were past due and in collection.
>
> 15. Plaintiff, in July 2008 advised Equifax, Trans Union, and Experian, the "Credit Reporting Defendants," of the inaccurate reporting of several collection accounts.
>
> 16. She informed them that these accounts were not hers and/or had been paid off and were not owed and she requested reinvestigation and correction of the same.

9

> 18. The Credit Reporting Defendants received notice from the Plaintiff of the fact that she was disputing their reporting of the accounts at issue herein.
>
> 19. On information and belief, Credit Reporting Defendants contacted the various furnishers of the disputed information.
>
> 20. One collection account was being reported by defendant, DirecManagement, Inc.
>
> 21. Plaintiff received the reinvestigation results from the Credit Reporting Defendants and the collection accounts remained on her credit report.
>
> 22. The defendants did not perform a proper investigation as the accounts were not deleted and not updated or corrected.
>
> 23. The continued reporting by the defendants occurred after the plaintiff's notifications to the defendants that the accounts were not being reported correctly.

(Doc. 4, p.4-5).

Pettway specifically alleges that <u>collection</u> accounts were improperly reported in <u>2008</u> and that after her request for reinvestigation, Experian and Equifax failed to properly reinvestigate these collection accounts. She also alleges that she was denied credit in September <u>2008</u>. Moreover, in her response, Pettway states as follows:

> I would like to point out that, Central Credit Solutions and DirecManagement were the only two collection accounts in my Equifax credit file. Please note that DirecManagement was never listed on credit file from Experian. Experian only report the Credit Solution account in error.

(doc. 96, p.1)

Thus, there is no allegation or factual basis for a claim that Cap One or Capital One, CitiFinancial, or Global Tel Con, were reported by Experian or Equifax as <u>collection</u> accounts in June 2008. Pettway provided a copy of the credit report from Credit Technologies, Inc. (doc. 96, Exhibit 4). Under the section captioned "Collection Accounts", the report could be interpreted to indicate that CitiFinancial and Cap One were reported by Experian and Equifax as collection

10

accounts (doc. 96, Exhibit 4). However, the Credit Technologies' consumer report also shows both accounts reporting as "settlement accepted on this account" and "settled". Global Tel Con was not on the report (doc. 96. p. 26-32). Thus, in 2008, these accounts were not reported as past due or in collection.

In July 2008, Equifax provided Pettway with a copy of its credit file and the only <u>collection</u> accounts showing were those of Central and Direct.[6] Neither Experian nor Pettway has provided the Court with a copy of an Experian credit file of June 2008 to show whether CitiFinancial, Cap One, or Global Tel Con appeared as a <u>collection</u> accounts. However, when Experian responded to Pettway's investigation request, it responded only as to the Central collection account and Pettway admits that Central was the only collection account reported in error by Experian (doc. 96, p.1).

Additionally, Pettway's claims are also based on a failure to conduct a reasonable investigation of the disputed collection accounts. In that regard, Pettway provided the Court with copies of two duplicate letters wherein she requests investigation. In the letters, Pettway states that she "received a call from both collection agencies", "decided to pay the bill because it was a small amount until [she] could find out for certain if it was or was not [hers]" and that she "paid the bills within the next 2 days." She then wrote that she could provide the cancelled checks if necessary.

Now, with her response, Pettway has provided the Court with copies of the two cancelled checks, neither of which were payment to Cap One, CitiFinancial, or Global Tel Con. Thus,

---

[6] The accounts appeared on the July 2008 Equifax report as part of Pettway's credit history but not as a collection account.

nothing in these letters requesting reinvestigation or the cancelled checks, indicates that she paid or requested a reinvestigation of the Cap One, CitiFinancial, or Global Tel Con accounts or that these accounts were collection accounts in June 2008 or at the time Pettway filed her amended complaint in October 2008.

At her deposition, Pettway testified that it was her understanding that "the other issues that I had raised with my attorney were a part of the complaint . . . I was not knowledgeable of the fact that those were the only things that they complained about for me because there were other things" (doc. 101, p. 21). She also testified that when the Magistrate Judge asked if there were other items, she "thought that those things could be included because there were other things." (Id.)

*Pro se* plaintiffs are entitled to a liberal construction of their pleadings. Dinardo v. Palm Beach County Circuit Court Judge, 199 Fed. Appx. 731, 734-735 (11th Cir. 2006); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir.1998) (explaining that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed"); Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 (1972) (A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers."). However, despite this leeway, Pettway may not amend her complaint by way of an argument or claim raised for the first time in response to the motion for summary judgment. Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Importantly, the docket indicates that the deadline for amendment of pleadings was April 30,

2009[7] and that her counsel did not file the motion to withdraw until July 1, 2009. Thus, she was represented by counsel during the time period for amendment. Because there is no evidence that Experian and Equifax issued a consumer report showing CitiFinancial, Cap One, or Global Tel Con, as <u>collection</u> accounts in June of 2008, or that Pettway requested a reinvestigation of these accounts as they appeared on her consumer report, any claim based thereon will not be considered as it is not a claim in the complaint.

<u>Claim raised pursuant to 15 U.S.C. § 1681i(5)B(i) and (ii)</u>

Also in the response, Pettway raises for the first time a claim that she has proof that information was deleted from her account and then replaced by Equifax in violation of 15 U.S.C. § 1681i(5)B(i) and (ii). She raises this claim without alleging the identity of the accounts deleted and replaced, which credit reporting agency may have done so, or when this may have occurred. Again, Pettway may not amend her complaint by way of an argument raised in response to the motion for summary judgment. <u>Gilmour,</u> 382 F.3d at 1315. Therefore, any claim based on this section of the FCRA will not be considered.

<u>Claims pursuant to 15 U.S.C. § 1681e(b)</u>

Pettway brings her claims pursuant to 15 U.S.C. § 1681e(b) which states as follows:

Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

"To establish a prima facie violation of § 1681e(b), a consumer must present evidence

---

[7] After counsel was allowed to withdraw, an amended Rule 16(b) Scheduling Order was entered on September 22, 2009. In that order, the Court stated that "Any motion for leave to amend the pleadings or to join other parties has been filed." (doc. 78, p.2).

that (1) a credit reporting agency's report was inaccurate and (2) that the inaccurate report was a causal factor in the denial of his credit application. . . . The 'failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.'" Ray v. Equifax Information Services, Inc., 327 Fed. Appx. 819, 826 (11th Cir. 2009) (citations omitted).

The parties do not dispute that Experian or Equifax are credit reporting agencies. However, a "consumer report" or "consumer credit report" is different from a credit file, credit report, or credit disclosure. A "consumer report" is a report generated by a credit reporting agency and delivered to a third party such as an employer, insurer, or lender, for use in deciding whether the consumer is eligible for credit or other purposes. 15 U.S.C. § 1681a(d). A credit report, file or disclosure is the credit reporting agency's file which it provides to the consumer, not third parties, and contains "information solely as to transactions or experiences between the consumer and the person making the report . . . " 15 U.S.C. § 1681a(d); § 1681g; see also 15 U.S.C. § 1681a(d)(2)(A)(i) ("report containing information solely as to transactions or experiences between the consumer and the person making the report").

Thus to establish her prima facie case, Pettway must provide sufficient evidence to show that Equifax or Experian, the defendant credit reporting agencies, delivered or provided an inaccurate consumer credit report to a third party, and that the inaccurate report was the causal factor in the denial of credit to Pettway. However, the only "consumer credit report" which Pettway has provided to the Court is that of Credit Technologies, Inc.[8] which was issued in June

---

[8] Credit Technologies produced what has been described as a "merge credit report" (doc. 74, p. 17). Presumably, Credit Technologies is a "reseller", defined in the FCRA as a consumer reporting agency that "assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; . . .

14

2008. According to Pettway, Credit Technologies reported Pettway's consumer credit information to First Choice Funding-Mobile d/b/a Norstar and First Choice denied her credit in June 2008. However, this is not the basis for the claim in this case.

As explained, reports prepared only for Pettway, such as those prepared by Experian or Equifax in response to her credit disputes, are not "consumer reports" under the FCRA. Pettway did not provide the Court with a copy of a consumer report provided by Experian or Equifax from which the trier of fact could find or infer that inaccurate information was published therein or that the consumer report was a causal factor in the denial of credit in September 2008. Pettway also did not provide any evidence that the Credit Technologies consumer report issued in June 2008, was a causal factor in the denial of credit in September 2008.

Therefore, the Court is without any evidence that a consumer report prepared by Experian or Equifax was a causal factor in the denial of credit in September 2008 as plead in the amended complaint. "A consumer asserting claims under . . . § 1681e(b) against a credit reporting agency bears the burden of proving that the agency's credit report was a causal factor in the denial of his credit application." Jackson v. Equifax Information Services, LLC., 167 Fed.Appx. 144, 146 (11th Cir. 2006) (citation omitted).

Claims pursuant to 15 U.S.C. § 1681i

Pettway also brings claims pursuant to 15 U.S.C. § 1681i which addresses the procedure when there is a disputed accuracy. Paragraph (a)(1)(A) explains that

> Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or

---

." 15 U.S.C. § 1681a(u).

15

indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

Subparagraph (a)(5) addresses the "[t]reatment of inaccurate or unverifiable information" and states that

(A) In general.--If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall--
> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5)(A).

With regard to consumer reporting agencies, the FCRA requires these agencies to follow reasonable procedures to assure the maximum accuracy of each credit report. In addition, if a consumer brings a dispute to the agency as to the completeness or accuracy of a credit report, the agency is required by [the FCRA] ... to reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. The agency is only liable under this provision if it fails to follow reasonable procedures to ensure the accuracy of a credit report--it is not strictly liable simply because a credit report is inaccurate.

Peart v. Shippie, - - - Fed Appx. - - - (11th Cir. August 11, 2009) (quoting Cahlin v. General Motors Acceptance Corp., 936 F. 2d 1151, 1156 (11th Cir. 1991) (internal quotations omitted).

To establish a claim for failure to reinvestigate under section 1681i(a), Pettway must make a prima facie showing that:

> (1) The plaintiff's credit file contains inaccurate or incomplete information. 15 U.S.C. § 1681i(a)(1).
>
> (2) The plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information.
>
> (3) The plaintiff's dispute is not frivolous or irrelevant. 15 U.S.C. § 1681i(a)(3).
>
> (4) The credit reporting agency failed to respond to the plaintiff's dispute. 15 U.S.C. § 1681i(a)(1), (2), and (6).
>
> (5) The failure to reinvestigate caused the consumer to suffer damages.

Cousin v. Trans Union Corp., 246 F.3d 359, 368-69 (5th Cir.), cert. denied, 534 U.S. 951, 122 S.Ct. 346 (2001) (reversing jury award as a matter of law because plaintiff did not show sufficient evidence of actual damages).

As previously stated, a "consumer asserting claims under §§ 1681i(a) . . . against a credit reporting agency bears the burden of proving that the agency's credit report was a causal factor in the denial of his credit application." Jackson, 167 Fed.Appx. at 146.

### Response to Pettway by Experian and Equifax

As pointed out by Experian, the FCRA is not a strict liability statute and a credit reporting agency can be liable only for failing to follow reasonable procedures to ensure maximum possible accuracy of the reported information. In that regard, Experian points out that in response to Pettway's complaint, Experian contacted Central who verified the information in Experian's report. Experian then related this information to Pettway and provided her with contact information for Central. In response to Pettway's complaint to Equifax, it requested more information from Pettway. Pettway failed to provide any additional information. Both Experian and Equifax point out that Pettway admitted that the two collection accounts were hers and admitted that she paid the underlying creditors and not the collection agencies.

17

In her response, Pettway points to her letter to Experian and argues that Experian reported the Central account in error. Pettway also argues that Equifax should have been able to discern from Pettway's letter all the information necessary to conduct an investigation.

Pettway offers no argument or evidence that after Experian reinvestigated the dispute with Central, Experian had any reason to question Central's credibility, accuracy, or reputation such that its investigation was not reasonable. 16 C.F.R. Part 600 App. (2000) ("The [FCRA] does not require error free consumer reports. If a consumer reporting agency accurately . . . communicates consumer information received from a source . . . reasonably believe[d] to be reputable, and . . . credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate."). Nor is there any other evidence from which a reasonable jury could not find that Experian did not reasonably respond to Pettway's complaint. As to Equifax, it reasonably requested additional account information from Pettway as Pettway's complaint was vague. Pettway did not respond. A reasonably jury could not find that Equifax thereafter acted unreasonably by failing to investigate Pettway's complaint.

Since there is no genuine dispute of material fact as to whether Experian or Equifax acted reasonably in response to Pettway's complaint, Experian and Equifax are entitled to judgment as a matter of law in their favor.

Damages

In the amended complaint, Pettway alleges that she was damaged because she was "denied credit in September 2008 based on her credit reports after the defendants were placed on notice of the disputed accounts and failed to remove or correct the disputed accounts." (doc. 4).

18

However, in response to the motion for summary judgment, Pettway has failed to present any evidence to support this claim. Specifically, she has not provided a consumer credit report from either Experian or Equifax issued at the request of a creditor or lender at or near September 2008. Also, in her response, Pettway did not identify the creditor by whom she was denied credit at or near September 2008,[9] and she has not provided a denial letter from any creditor or lender written at or near September 2008.

The Eleventh Circuit has held that the "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment." Ray, 327 Fed. Appx. at 826 (citing Nagle v. Experian Info. Solutions, Inc., 297 F.3d 1305, 1307 (11th Cir.2002)) ("because Ray failed to produce the credit report from 2004 which CitiBank would have relied on, he cannot show that it was inaccurate . . ."). Also, a "consumer asserting claims under §§ 1681i(a) or 1681e(b) against a credit reporting agency bears the burden of proving that the agency's credit report was a causal factor in the denial of his credit application." Jackson, 167 Fed. Appx. at 146 (citation omitted). Since Pettway did not produce any evidence to support this allegation, she has failed to "create a genuine issue of material fact that the inaccurate information was reported by" Equifax or Experian, "or that it caused [her] harm". Ray at 826; id. Therefore, Pettway has also failed to make a sufficient showing on this element of her prima facie case and defendants are entitled to summary judgment.

V. Conclusion

For the reasons set forth herein, summary judgment is granted in favor of defendants

---

[9] The Court found that in the response to Interrogatory No. 6, Pettway states that she was denied credit approximately 22 times since 2004, some after the date of her amended complaint. She does list a denial by Whitney Bank on September 19, 2008 (doc. 96, p. 37).

Experian and Equifax. Accordingly, Pettway's claims are dismissed with prejudice.

**DONE** and **ORDERED** this 12th day of February, 2010.

<u>s / Kristi K DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**